IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Denise Taylor,                    )
                                  )
              Plaintiff,          )
                                  )
     v.                           )     No. 1:18-cv-02259
                                  )
Nancy A. Berryhill, acting        )
Commissioner of Social            )
Security.                         )
                                  )
              Defendant.          )


MEMORANDUM OPINION AND ORDER

     Plaintiff Denise Taylor ("Taylor") brought this action

against Nancy A. Berryhill, Acting Commissioner of the Social

Security Administration (the "Commissioner"), for review of the

denial of her applications for disability insurance benefits

("DIB") under Title II of the Social Security Act, and

supplemental security income benefits ("SSI") under Title XVI of

the Social Security Act. Taylor now moves to reverse the

Commissioner's decision. She claims that the Commissioner's

determination that she is not disabled, and thus is not entitled

to DIB or SSI, was not supported by substantial evidence and is

contrary to the law. For the following reasons, Taylor's motion

is granted in part and denied in part. This case is remanded to

the Social Security Administration for proceedings consistent

with this opinion.

On April 15, 2015, Taylor filed her applications for DIB and SSI. R. 21. In these two applications, Taylor claimed that she had been disabled since February 14, 2015, around when she underwent surgery and developed a spinal epidural abcess. *Id*. at 21, 71. Taylor's medical records indicated that she also had neuropathy, a fractured toe, osteoarthritis of the thumb, an ACL tear, hypertension, anemia, and depression. *Id*. at 24. Taylor worked as an operating room technician for approximately 23 years before her February 2015 surgery. *Id*. at 21, 51. During 2016, she worked part-time in a medical sterile processing department. *Id*. at 50-54.

Taylor's applications were denied on November 4, 2016, and upon reconsideration on January 29, 2016. R. 21. Taylor thereafter requested a hearing, which took place on January 26, 2017 before an administrative law judge (the "ALJ"). *Id*. She testified at that hearing as did a vocational expert. *Id*. The ALJ denied Taylor's claims on June 22, 2017, finding she was not disabled as defined in the Social Security Act. *Id*. at 31.

In reaching her decision, the ALJ employed the five-step inquiry set out in 20 C.F.R. §§ 404.1520 and 416.920. That inquiry requires a determination of "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that

the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citation omitted). These steps are applied sequentially. *Craft v. Astrue*, 539 F.3d 668, 673–74 (7th Cir. 2008). The claimant bears the burden of proof on steps one through four; the burden of proof shifts to the Commissioner for step five. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). To reach a finding that the claimant is disabled, the ALJ must reach an affirmative answer at step three or step five. *Craft*, 539 F.3d at 673–74.

At step one, the ALJ determined that Taylor had not engaged in substantial gainful activity since February 14, 2015, her claimed onset date. R. 23. Taylor had some earnings in 2016 but was not then employed as defined in 20 C.F.R. § 404.1571 *et seq.* and § 416.971 *et seq. Id.*

At step two, the ALJ found that Taylor had one severe impairment: status post spinal cord injury. R. 23–24. Taylor's other physical impairments were found to be non-severe: neuropathy, status post fractured toe, joint osteoarthritis, an ACL tear, hypertension, and anemia. *Id.* at 24. The ALJ further determined that Taylor's depression was not severe and caused no

more than minimal limits on Taylor's ability to perform basic mental work activities. *Id*.

In assessing Taylor's depression at step two, the ALJ considered four functional areas, also known as the four "Paragraph B" criteria for mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ determined that Taylor had: (1) "no limitations in understanding, remembering, or applying information", (2) "no limitations in interacting with others," (3) "no limitations in concentrating, persisting, or maintaining pace," and (4) "mild limitations in adapting or managing oneself." R. 24. The ALJ explained that these determinations were not themselves an assessment of Taylor's residual functional capacity ("RFC") to perform her past work, but that her assessment at step four would reflect these determinations. *Id*. at 25.

The ALJ supported these functional area determinations with a summary of Taylor's reported symptoms and relevant medical opinions. In June 2015, Taylor reported that she finished things she started to do, followed written instructions well, followed spoken instructions very well, and read three times a week. *Id*. at 24, 267–73. In September 2015, Taylor reported that she did not finish things she started to do or follow instructions well, but she also reported external stressors at that time, including financial issues. *Id*. at 24, 283. Taylor "had never been

hospitalized for mental health treatment, never been in individual therapy, and had never taken psychotropic medications," and, on examination, Taylor "was alert and oriented to person, place and time." *Id.* Taylor was diagnosed with "major depression, severe, single episode" on October 22, 2015. *Id.* at 24, 2363. Taylor's subsequent psychiatric examinations in April, May, June, and September 2016, "showed mostly a normal mood and affect." *Id.* at 24, 2392, 2519, 2523, 2527.

At step three, the ALJ determined that Taylor did not have an impairment or combination of impairments that were conclusively disabling. *Id.* at 25.

At step four, the ALJ concluded that Taylor could perform light work: frequent lifting of up to 10 pounds, maximum lifting of not more than 20 pounds, and a good deal of walking or standing. *Id.* at 25–30 (citing 20 CFR §§ 404.1567(b) and 416.967(b)). To reach this conclusion, the ALJ analyzed evidence of Taylor's physical abilities and her depression. The ALJ considered that Taylor reported she used a walker and cane in 2015 and 2016 and reported using her cane consistently in 2017. *Id.* at 26, 28. November 2016 physical therapy progress notes from the Rehabilitation Institute of Chicago stated that Taylor's ambulation status was "complete independence," Taylor had met all goals on her release from physical therapy, she

reported she was "80% back to normal," and "her functional gait status revealed 30/30 with no apparent defects and 5/5 strength in the bilateral lower extremities." *Id.* at 28 (citing R. 2424, 2476).

The ALJ assigned partial weight to the March 30, 2016 opinion of Dr. Bakhtiar Yamini, Taylor's neurosurgeon, that Taylor could return to work part-time with limits on the weight she was lifting. The ALJ listed four reasons for giving Dr. Yamini's opinions partial weight. *Id.* at 29. *First*, November and December 2015 progress notes from Taylor's family medicine practitioner, Dr. Andi Arnautovic, stated that Taylor's "anemia results were all within normal limits," her "peripheral neuropathy was controlled with Gabapentin," and her left knee pain was doing well. *Id.* (citing R. 2495, 2515). *Second*, Dr. Yamini's March 2016 notes also stated that Taylor was ready to go back to work, she moved her extremities well, and was significantly improving. *Id.* (citing R. 2552). *Third*, the ALJ noted Taylor's substantial gainful activity earnings from June 2016 through September 2016. "*Id.* (citing R. 224–25). *Fourth*, November 2016 physical therapy records from the Rehabilitation Institute of Chicago show Taylor's ambulation status was "complete independence." *Id.* (citing R. 2424).

In assessing Taylor's RFC, the ALJ stated that she gave "great weight" to the state agency psychologists' "assessments

for no more than mild limitations in the paragraph B criteria."
*Id.* The ALJ noted that these reports' assessment of a severe
mental impairment was not consistent with the reports'
narratives, which listed no more than mild limitations for
Taylor. *Id.* The ALJ also contrasted these reports against
Taylor's lack of history of psychiatric or mental health
treatment and consistent reports of normal mood from other
medical examiners. *Id.*

The ALJ recognized that, in September 2015, Taylor reported
her medications made her drowsy, caused memory loss, and
frequent urination. *Id.* at 26. The ALJ later noted that Taylor's
October 2015 psychiatric examination showed that she was alert,
could relate recent news events, and perform simple memory
tests. *Id.* at 28–29. And, in March 2016, Taylor denied having
bladder problems. *Id.* at 29.

At step five, the ALJ concluded that Taylor can perform her
past job as an operating room technician and that that job was
not precluded by Taylor's RFC. *Id.* at 30.

Taylor requested review of the ALJ's decision. The Appeals
Council denied her request on January 25, 2018. The ALJ's
decision then became the final decision of the Commissioner.
*Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). This
appeal followed.

II.

In reviewing the Commissioner's final decision that Taylor is not disabled, I must determine "if the ALJ applied the correct legal standards and supported her decision with substantial evidence." *Bates v. Colvin*, 736 F.3d 1093, 1097–98 (7th Cir. 2013) (citation omitted); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bates*, 736 F.3d at 1098 (citation and internal quotations omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citation omitted). "The ALJ is not required to address every piece of evidence or testimony presented but must provide an accurate and logical bridge between the evidence and her conclusion . . . .") *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citation and internal quotations omitted). Under this deferential standard, I may not reweigh the evidence or substitute my own judgment in place of the ALJ's judgment. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (citation omitted). However, I must remand where the ALJ's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review . . . ." *Id.* (citation and internal quotations omitted).

III.

Taylor challenges the Commissioner's decision on four grounds: First, Taylor argues that the ALJ failed to analyze Taylor's functional concentration, persistence or pace when determining Taylor's RFC. Second, Taylor argues that the ALJ improperly found that Taylor's diagnosed major depression was not severe. Third, she argues the ALJ improperly analyzed her self-reported medication side effects and her need for a cane. Fourth, she argues the ALJ improperly evaluated opinion evidence from Taylor's treating physicians.

A.

Taylor claims that the ALJ's analysis of Taylor's RFC was in error because the ALJ failed to explain why she found that Taylor's depression caused no limitation in concentration, persistence or pace and because the ALJ did not adopt the opinion of state agency consultants that Taylor had mild limitations in that functional area. Taylor further argues that the ALJ should have found that Taylor had mild limitations in her concentration, persistence or pace. This argument thus extends beyond the ALJ's RFC analysis at step four to challenge the functional area findings made at step two.[1]

---

[1]     The ALJ conflates steps two and four to a degree. As Taylor notes in her reply brief, the ALJ did not discuss state agency consultants' opinions that Taylor had mild difficulties in maintaining concentration, persistence or pace at step two. But,

Contrary to Taylor's assertions, the ALJ supported her functional areas findings at step two with specific citations to relevant medical evidence. Concentration, persistence or pace refers to a claimant's "abilities to focus attention on work activities and stay on task at a sustained rate." *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00E3. The ALJ noted that Taylor reported she finished things she started to do and followed instructions well in June 2015. R. 24, 267–73. The ALJ acknowledged that Taylor later reported that she did not finish things she started to do or follow instructions well, but she also reported additional external stressors. *Id*. at 24, 283. The ALJ considered Taylor's October 2015 diagnosis of major depression in the context of subsequent psychiatric examinations that showed a normal mood and affect. *Id*. at 24. The ALJ also considered that Taylor has never been hospitalized or medicated for mental issues. *Id*. While the ALJ's analysis of Taylor's mental limitations at step two is admittedly "sketchy," it provides a "minimal level of articulation" that allows me to "trace the path of the ALJ's reasoning." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985).

Taylor also argues that the ALJ erred by failing to discuss Taylor's concentration, persistence or pace in her assessment of

as Taylor admits, the ALJ discussed those state agency consultants' opinions in her assessment of Taylor's RFC. Dkt. No. 10 at 7.

Taylor's RFC at step four. To be sure, "[i]n determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing S.S.R. 96-8p; *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir.2003)). However, it does not follow that an ALJ's RFC analysis must also include a discussion of functional categories for which she has found no limitation. *See Johnson v. Colvin*, No. 14-C-190, 2014 WL 7336460, at *4 (E.D. Wis. Dec. 22, 2014)("[T]he ALJ did not find any limitations at all, and as such it was perfectly sensible to leave the heart conditions out of the RFC entirely.") Taylor relies on cases where the ALJ erred by failing to address a *mild limitation* determined at step two in assessing a claimant's RFC. *See Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 788 (N.D. Ill. 2017); *Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012); *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011). None of these cases state that an RFC decision must address a claimant's mental impairment functional area that the ALJ previously determined to have no limitations.

Taylor also argues that the ALJ erred at step four by giving "great weight" to state agency consultants' assessments of Taylor's functional limitations while failing to explain why

she did not adopt those state agency consultants' opinions that Taylor had mild limitations in her functional area of concentration, persistence or pace. *See* R. 73, 85, 98-99, 110-11. Taylor is correct that if an ALJ wishes to afford significant weight to a portion of a state agency psychologists' findings, the ALJ is "obliged to explain why [she] rejected certain limitations set forth therein." *Green v. Colvin*, No. 13-C-1218, 2015 WL 4347842, at *1 (E.D. Wis. July 13, 2015). However, the ALJ did that here. In assessing the state agency psychologists' assessments, the ALJ considered the internal consistency of the reports' narratives and weighed the consistency of the reports against other evidence in the record, namely the absence of a treatment history for mental illness and multiple subsequent psychiatric evaluations showing normal mood and effect. *See* R. 29; *see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005) ("[An] ALJ is not required to accept or permitted to accept medical evidence if it is refuted by other evidence.")

In arguing that the ALJ's RFC analysis should have resulted in mild limitations in concentration, persistence or pace, Taylor asks me to reweigh the evidence and substitute my judgment for that of the ALJ. I cannot do either. *Burmester,* 920 F.3d at 510. For the reasons stated above, I conclude the ALJ did not err in determining Taylor had no limitation in

concentration, persistence or pace and in not discussing corresponding RFC limitations.

B.

Taylor next argues that the ALJ improperly disregarded evidence to find that Taylor's depression was non-severe at step two. Taylor primarily argues that the ALJ afforded too little weight to her diagnosis of major depression. The Commissioner responds that the ALJ properly evaluated the four "Paragraph B" criteria for mental functioning and concluded that Taylor's depression was non-severe as it caused no more than a mild limitation of any functional area.

Taylor points to *O'Connor-Spinner v. Colvin,* where the Seventh Circuit stated that an ALJ's determination that diagnosed major depression was non-severe was "nonsensical," because, by definition, such a diagnosis "reflects a practitioner's assessment that the patient suffers from 'clinically significant distress or impairment in social, occupational, or other important areas of functioning.'" 832 F.3d 690, 697 (7th Cir. 2016) (quoting AM. PSYCHIATRIC ASS'N., DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 679–80 (4th ed. text revision 2000)). The *O'Connor-Spinner* court explained that "[t]he Step 2 determination is a *de minimis* screening for groundless claims intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *Id*. at 697

13

(internal quotations and citations omitted). Because that ALJ "eliminated depression at Step 2, he did not take into account *any* effects which the disorder might have on [the claimant's] ability to maintain employment." *Id.* at 698 (emphasis in original). The court concluded that the ALJ thus failed to build a logical bridge between the evidence of impairments from the claimant's diagnosed major depression and the ALJ's conclusion that she could work full-time and reversed the ALJ's determination. *Id.*

More recently, in *Meuser v. Colvin*, the Seventh Circuit criticized an ALJ's step two determination that claimant's diagnosed schizophrenia was non-severe. 838 F.3d 905, 910 (7th Cir. 2016) The *Meuser* court had "difficulty imagining how an uncontested diagnosis of schizophrenia (which describes Meuser's situation) could *not* survive Step 2," and repeated the *O'Connor–Spinner* court's emphasis that "Step 2 is a *de minimis* screening for groundless claims." Id. (emphasis in original). The *Meuser* court did not reach the issue of whether a diagnosis alone can satisfy the severity analysis in step two, as the ALJ made other errors that merited reversal. *Id.* at 911.

Considering this precedent, I am persuaded by Taylor's argument that the ALJ erroneously found her depression was non-severe at step two. The ALJ examined the severity and symptoms of Taylor's depression but did not point to any diagnosis that

conflicts with major depression. Nor does the record reveal any such conflicting diagnosis. Taylor's diagnosis thus established a more-than-minimal limitation in her ability to do basic activities and met the *de minimis* inquiry of step two. *See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe*, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities*.")(emphasis added and internal citations omitted); 20 C.F.R. § 416.920a(d)(1) (same).

However, this error does not automatically warrant remand. In *Davis v. Berryhill*, the Seventh Circuit determined that an ALJ erred in determining that a claimant's depression was not severe at step two, but that error was harmless because the ALJ proceeded with her analysis and found plaintiff had only mild limitations in the four "Paragraph B" criteria for mental functioning. 723 F. App'x 351, 356 (7th Cir. 2018). The ALJ then proceeded to assess the claimant's RFC. *Id.* Here, as in *Davis*, the ALJ analyzed the four "Paragraph B" criteria for mental functioning, found no more than mild limitations there, and then discussed whether Taylor's depression warranted further limitations to Taylor's RFC. R. 24, 28-30. Thus, the ALJ's error in finding Taylor's depression to be non-severe in step two was harmless, and does not merit remand. *See also Curvin v. Colvin*,

778 F.3d 645, 649 (7th Cir. 2015) (noting that, even if ALJ erred in determining impairments were non-severe at step two, such an error would have been harmless because the ALJ properly considered the claimant's impairments, objective medical evidence, symptoms, and credibility when determining her RFC).

C.

Taylor argues that the ALJ erred in assessing her self-reported symptoms. Specifically, she argues the ALJ failed to analyze the side effects from Taylor's medication and disregarded substantial evidence supporting Taylor's reported need for a cane or walker.

To assess a claimant's self-described symptoms, an ALJ must undertake a two-step process. SSR 16-3p, at *2; *see also* 20 C.F.R. § 404.1529; 20 C.F.R. § 416.929. First, the ALJ must consider whether an underlying impairment "could reasonably be expected to produce" the individual's reported symptoms. *See* 20 C.F.R. §§ 404.1529(b) and 416.929(b). Second, the ALJ evaluates the intensity and persistence of those symptoms in consideration of other relevant evidence in the record. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c).

I disagree that the ALJ neglected to assess the side effects from Taylor's medication. The ALJ recognized that, in September 2015, Taylor stated that her medications made her drowsy, caused memory loss, and frequent urination. R. 26

16

(citing R. 289-92). The ALJ later recognized that Taylor's
October 2015 psychiatric examination showed that she was alert,
could relate recent news events, and perform simple memory
tests. R. 28-29. The ALJ also noted that, in March 2016, Taylor
denied having bladder problems. R. 29.

True, the ALJ did not parse her written analysis to
separately address the side-effects of Taylor's medication.
However, Taylor does not identify other objective evidence
consistent with her reports, such as physician records of side
effects. Rather, as the ALJ notes, Taylor's doctors later
recorded the absence of Taylor's various reported side effects.
Without additional supporting evidence, the ALJ had no reason to
make specific written findings on Taylor's reported side
effects. *Cook v. Astrue*, 800 F. Supp. 2d 897, 909 (N.D. Ill.
2011) ("[T]he ALJ may discount testimony regarding side effects
of medication that are unsubstantiated by objective evidence.")
(citing *Nelson v. Sec'y of Health & Human Servs.*, 770 F.2d 682,
685 (7th Cir. 1985), *overruled on other grounds as stated in
Allen v. Smith*, 977 F.2d 385 (7th Cir. 1992). Though minimally
articulated, the ALJ's decision indicated that the she
considered Taylor's reported side effects and incorporated those
reports into her finding. *See Schoenfeld v. Colvin*, No. 15 C
267, 2016 WL 878263, at *8 (N.D. Ill. Mar. 8, 2016) (finding no
error in ALJ's alleged failure to discuss medication side

effects where ALJ noted the reported side effects and corroborating doctor's note). I cannot agree with Taylor that the ALJ ignored a "line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citation omitted).

Likewise, the record does not show that the ALJ disregarded Taylor's reported need for a cane or walker. The ALJ acknowledged that Taylor reported using a cane or walker at multiple points from 2015 to 2017. R. 26, 28. The ALJ contrasted those reports against November 2016 physical therapy progress notes that Taylor's ambulation status was "complete independence." *Id*. at 28. The ALJ also noted that Taylor had then met her physical therapy goals, reported she was "80% back to normal," and her functional gait status and lower extremities strength had returned. R. 28.

Taylor argues that the ALJ's reliance on that November 2016 evidence is misplaced considering the "long history" of pain, ambulation problems, and decreased mobility supporting her alleged need for a cane or walker. To support this argument, Taylor points to a score of physical therapy and physician records that predate November 2016. (*e.g.*, R. 278, 295, 351, 354, 1018, 1022, 2264, 2422–25, 2495, 2515, 2531). But, I cannot reweigh this line of evidence. Nor was the ALJ required to address every ambulation issue reported on the record.

Taylor is correct that a doctor's finding that a patient can walk 50 feet without a cane does not alone address her ability to walk for long period of time at work. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). But the ALJ did not rely on a single ambulation assessment. The ALJ relied on reports from the Rehabilitation Institute of Chicago that determined Taylor had met her physical therapy goals, resolved her gait defects, returned strength to her lower extremities, and was "80% back to normal." The ALJ built a sufficient logical bridge from the evidence of Taylor's cane usage and ambulation issues and the physical therapist's later determination that Taylor resolved her ambulation issues, to her conclusion.

D.

Taylor argues that the ALJ improperly evaluated treating physicians' opinions that Taylor could only work part-time because the ALJ failed to apply the factors listed in 20 C.F.R. § 404.1527 in finding that Taylor could work full-time. Taylor claims the ALJ incorrectly assigned partial weight to Dr. Bakhtiar Yamini's March 2016 opinion, which states:

> Ms. Taylor is doing extremely well. She will return to work 2 to 3 days a week for 4 to 6 hours and she will have a maximum lifting of 25 pounds. She will come back to see me in August for further evaluation.[2]

---

[2] A nurse at Dr. Yamini's office concurred with this opinion, and the ALJ considered those opinions together. R. 29, 2376.

R. 2552. Taylor also claims that the ALJ ignored the opinion of Taylor's family medicine practitioner, Dr. Andi Arnautovic. On January 8, 2016, Dr. Arnautovic was presented with a request for a letter clearing Taylor to return to work. He wrote:

> Cleared by Neurosurgery to go back to work with light duty/part time (Neurosurgery letter scanned). Decision to go back to full duty will be determined by Neurosurgery. F/U with Neurosurgery and PT as scheduled.

R. 2507.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations and citations omitted). "An ALJ must offer good reasons for discounting a treating physician's opinion." *Id.* (internal quotations and citations omitted). If an ALJ gives a treating physician's opinion lesser weight, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c). An ALJ does not need to "explicitly weigh each factor" so long as the ALJ's decision makes clear that those factors were

considered. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

The ALJ did not err in analyzing Dr. Yamini's March 2016 opinion. The ALJ listed four reasons for giving Dr. Yamini's opinions partial weight: Dr. Arnautovic's 2015 progress notes that Taylor's anemia and peripheral neuropathy were under control; Dr. Yamini's own notes that Taylor was ready for work, moved her extremities well, and was improving; Taylor's earnings from part-time work in 2016; and physical therapy records stating Taylor's ambulation status was "complete independence." R. 29. The ALJ's discussion of Dr. Yamini's opinion indicates that she considered its supportability and consistency with the record, which are factors set out in 20 C.F.R. §§ 404.1527(c)(3) and (4). Taylor is incorrect that the ALJ was required to *discuss* each of the factors set out in 20 C.F.R. § 404.1527(c). *Schreiber*, 519 F. App'x at 959. The ALJ's decision indicates that she did *consider* the factors set out in 20 C.F.R. §§ 404.1527, as required.

Contrary to Taylor's assertions in her reply brief, this is not a case where the ALJ relied on a non-treating doctor's opinion to overcome a treating doctor's opinion. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a

non-examining physician does not, by itself, suffice.") It is true that the ALJ afforded greater weight to a consulting state agency physician's opinion that Taylor could perform light work. R. 29 (citing R. 101). But, the ALJ did not expressly rely on that opinion in giving partial weight to the opinions of Dr. Yamini. Rather, the ALJ relied on records of Dr. Arnautovic and the Rehabilitation Institute of Chicago, both of whom provided treatment to Taylor. Taylor essentially asks that I reweigh the opinions of Dr. Yamini against the other evidence the ALJ considered in determining Taylor's ability to work, which I cannot do. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citation omitted).

Nor is this a case where an ALJ erroneously relied on a claimant's ability to walk a short distance to undercut the claimant's credibility in describing an impairment, as Taylor suggests. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). The ALJ afforded Dr. Yamini's opinion for part-time work less weight because later medical records attested to Taylor's "complete independence" and ability to walk.

Taylor is correct that an ALJ should not "draw conclusions about a claimant's ability to work full time based on part-time employment . . . ." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018); *see also Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011). Setting that reason aside, I cannot say that

the ALJ's assessment of Dr. Yamini's opinion is "patently wrong" because it is supported by other specific reasons that Taylor has not shown to be improper. *See Weaver*, 746 F. App'x at 579.

The ALJ erred by not providing any analysis of Dr. Arnautovic's January 2016 opinion that Taylor could go back to work part-time. The ALJ's decision does not make any mention of or citation to this opinion. The Commissioner responds that the ALJ cited to Dr. Arnautovic's treatment records at various points in her RFC analysis. R. 27–29. The issue is not the ALJ's failure to consider any of Dr. Arnautovic's treatment records or his later opinions, it is that the ALJ's decision does not indicate how she weighed the opinion of a treating physician on Taylor's ability to return to full-time work. I cannot discern whether the ALJ considered Dr. Arnautovic's January 2016 opinion in conjunction with or apart from his other treatment notes, let alone whether she considered the requisite factors in assigning weight thereto. *See* 20 C.F.R. § 404.1527.

I cannot agree with the Commissioner that this error was harmless because the ALJ discussed Dr. Arnautovic's other treatment records and Dr. Arnautovic has essentially the same opinion on Taylor's ability to work as Dr. Yamini. In January 2016, Dr. Arnautovic opined that Taylor could go back to work part-time but the "[d]ecision to go back to full duty will be determined by Neurosurgery." R. 2507. This seems to be a

deferral to Dr. Yamini on Taylor's ability to work full-time. However, the ALJ relied on Dr. Arnautovic's November and December 2015 progress notes to partially credit (or discredit) Dr. Yamini's opinion on Taylor's ability to work. I cannot "say with great confidence" what weight would be assigned to Dr. Arnautovic's opinions on remand or what the ALJ would do on remand. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

Accordingly, because the ALJ did not address Dr. Arnautovic's January 2016 opinion, the case must be remanded.

IV.

For the foregoing reasons, Taylor's motion is denied in part and granted in part. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: June 11, 2019